## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is entered into by and between: Rich Boden ("Boden") and Pass the Plate, Inc. ("PTP"; Boden and PTP are, collectively, the "Plaintiffs"); and LakePoint Services, LLC ("LPS"; Plaintiffs and LPS are each a "Party" and collectively the "Parties").

## RECITALS

WHEREAS, on September 4, 2015, the Plaintiffs initiated a lawsuit in the Superior Court of Cobb County, Georgia styled *Boden, et al. v. McCabe, et al.*, Civil Action File Number 15-1-7031-52 (the "Lawsuit") seeking compensatory and punitive damages from LPS for breach of a Concession Agreement between LPS and PTP (the "PTP Agreement") and from LPS, LakePoint Sports Development Group, LLC ("LSDG"), Earl Ehrhart ("Ehrhart" together with LSDG and Ehrhart, the "LakePoint Defendants"), and certain other defendants for tortious interference with the PTP Agreement, civil conspiracy, and other claims as set forth in the Complaint, as amended, in the Lawsuit.

WHEREAS, on June 11, 2018, LPS and certain of its wholly owned subsidiaries (collectively, the "LakePoint Debtors")[1] each filed voluntary petitions for relief under title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court of the Northern District of Georgia (Rome Division) (the "Bankruptcy Court") initiating chapter 11 bankruptcy cases jointly administered under the lead bankruptcy case *In re LakePoint Land, LLC*, chapter 11 case number 18-41337-bem (the "Bankruptcy Cases").[2]

WHEREAS, pursuant to Section 362 of the Bankruptcy Code, the filing of the Bankruptcy Cases stayed the continued prosecution of the Lawsuit.

WHEREAS on August 30, 2018, the Bankruptcy Court entered an Order [Docket No. 105] (the "Rejection Order") approving the LakePoint Debtors' first omnibus motion to reject certain executory contracts and unexpired leases, including the PTP Agreement.

WHEREAS, the LakePoint Debtors consent to modification of the automatic stay to allow the Plaintiffs to prosecute the Lawsuit subject to the conditions set forth in this Agreement and otherwise reflected in any order of the Bankruptcy Court approving this Agreement.

NOW THEREFORE, for and in consideration of the above premises and of the mutual covenants described below, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows

---

[1] LakePoint Land, LLC; LakePoint Land III, LLC; LakePoint Land IV, LLC; LakePoint Sports South, LLC; LP Housing LLC; LakePoint Hospitality, LLC; and LakePoint Merchandise, LLC.

[2] LPS's bankruptcy case number is 18-41340-bem.

1

1. **Recitals.** All recitals to this Agreement are true and correct, and form a part of this Agreement.

2. **Relief from Stay; Bankruptcy Court Approval.** The LakePoint Debtors consent to modification of the automatic stay in the Bankruptcy Cases to allow the Plaintiffs to continue to prosecute the Lawsuit against the LakePoint Defendants conditioned on the Plaintiffs' agreement that their recovery against the LakePoint Defendants will be limited to the Recovery Cap (defined below) and to the proceeds of any applicable insurance policies owned by, or providing insurance coverage to, one or more of the LakePoint Defendants, including, but not necessarily limited to insurance policies produced by one or more of the LakePoint Debtors and LakePoint Defendants through discovery in the Lawsuit. Within a reasonable time, but not later than fifteen (15) days after execution of this Agreement by all of the Parties, LPS shall file a motion in the Bankruptcy Court seeking approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and modification of the Automatic Stay consistent with the terms of the Agreement pursuant to Section 362 of the Bankruptcy Code and Rule 4001(d) of the Bankruptcy Rules. Plaintiffs acknowledge that this Agreement is subject to Bankruptcy Court approval upon proper notice as required under the Bankruptcy Rules, the LakePoint Debtors will make all good faith efforts, through their legal counsel in the Bankruptcy Cases, to seek and obtain approval of this Agreement, and the Parties agree that in the event that the Bankruptcy Court does not approve this Agreement, the Parties will be returned to their positions *status quo ante*.

3. **Reinstatement of PTP Agreement.** Upon approval of this Agreement by the Bankruptcy Court, LPS consents to the entry of a consent order reinstating the PTP Agreement notwithstanding the Rejection Order (the "Reinstated PTP Agreement"); provided, however, that the Parties ability to enforce the Reinstated PTP Agreement against or otherwise recover any damages from the LakePoint Debtors or the LakePoint Defendants in connection with such reinstatement shall be limited to the Recovery Cap and the proceeds of the LakePoint Defendants' insurance policies (as set forth in Sections 2 and 4 hereof).

4. **Recovery Cap.** Plaintiffs agree that their recovery, if any, against the LakePoint Defendants in the Lawsuit, against any of the LakePoint Debtors, or under the Reinstated PTP Agreement shall be limited to the proceeds of any insurance coverage available to the LakePoint Defendants under any applicable insurance policy or policies owned by or providing insurance coverage to, one or more of the LakePoint Defendants with the sole exception that Plaintiffs may also seek and recover punitive damages against Ehrhart outside and over and above the proceeds of any insurance coverage available to the LakePoint Defendants under any applicable insurance policy or policies owned by or providing insurance coverage to, one or more of the LakePoint Defendants, but only insomuch as any such punitive damage claim and resulting recovery, including any judgment, does not give rise to any claim against any of the LakePoint Debtors, any of the LakePoint Debtors' respective bankruptcy estates, or their respective successors and assigns (the "Recovery Cap"). For avoidance of doubt, since Plaintiffs' recovery against the LakePoint Debtors and the LakePoint Defendants is limited to the Recovery Cap, Plaintiffs shall not be entitled to any distributions in the Bankruptcy Cases.

12655293v1

5. **Waiver of Claim.** The Plaintiffs agree that, upon entry of an Order approving this Agreement, any proofs of claim filed by Plaintiffs in the Bankruptcy Cases, including Proof of Claim Nos. 3 and 4 as reflected in the Claims Registry maintained by the Garden City Group, LLC ("Plaintiffs' Bankruptcy Claims") will be deemed withdrawn and shall be disallowed without any further action by the LakePoint Debtors or further order of the Bankruptcy Court. Upon entry of an Order approving this Agreement, and to the extent that the Bankruptcy Court requires or the LakePoint Debtors, in their sole discretion, seek entry of an order disallowing Plaintiffs' Bankruptcy Claims, Plaintiffs, by this Agreement, consent to the entry of such order disallowing the Plaintiffs' Bankruptcy Claims. Additionally, subject to the Bankruptcy Court's approval of this Agreement, the Plaintiffs waive any and all of their respective rights to file any proofs of claim (or otherwise pursue any claims or causes of action) against any of the LakePoint Debtors.

6. **Costs, Fees, and Expenses.** Except as otherwise set forth in this Agreement, the Parties shall each bear their own costs, attorneys' fees and other expenses incurred in connection with the Lawsuit, the negotiation and drafting of this Agreement, and any motion or application seeking approval of this Agreement.

7. **No Admission of Liability.** The Parties understand, acknowledge, and agree that this Agreement constitutes a settlement of disputed claims and is not an admission of liability, error or wrongdoing by any Party.

8. **Enforcement; Attorneys' Fees to Prevailing Party.** Should any lawsuit be commenced between the Parties concerning the terms of this Agreement, or the rights and duties of the Parties hereto, the prevailing Party or Parties in such proceeding shall be entitled, in addition to such other relief as may be granted, to payment of all of their costs, expenses (including, but not limited to, expert fees), and reasonable attorneys' fees incurred in connection therewith.

9. **Entire Agreement.** This Agreement is a fully integrated document, containing the entire understanding among the Parties, and supersedes and integrates any prior understandings or written or oral agreements among the Parties respecting the subject matter of this Agreement. The Parties acknowledge and agree that there are no contracts, understandings, warranties or representations among the Parties, except as set forth in this Agreement. All prior oral or written agreements, if any, are expressly superseded hereby and are of no further force and effect.

10. **Modifications and Amendments.** No provision of this Agreement may be amended, modified, supplemented, changed, waived, discharged or terminated, except by an instrument in writing signed by the Party against whom enforcement of the amendment, modification, supplementation, change, waiver, discharge or termination is sought. This provision concerning amendments or modifications cannot be waived or otherwise made unenforceable except by a written document signed by all Parties to this Agreement which expressly states that it is an amendment to this Agreement.

12655293v1

11. **Controlling Law.** This Agreement and all questions relating to its validity, interpretation, performance, and inducement shall be governed by and construed, interpreted, and enforced in accordance with the substantive laws of the State of Georgia.

12. **Not Evidentiary.** No part of this Agreement may be used in any proceeding as evidence of the respective rights, duties, or obligations of the Parties; however, this restriction shall not apply in any proceeding involving the alleged breach, interpretation, or enforcement of this Agreement.

13. **Indulgences Not Waivers.** Neither any failure nor any delay on the part of any Party to exercise any right, remedy, power or privilege it has under this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or of any other right, remedy, power or privilege.

14. **Counterparts and Signing.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument. This Agreement may be executed by facsimile signature or e-mail, which shall have binding effect. Copies of original execution pages of this Agreement shall have the same force and effect as the originals themselves.

15. **Representations, Warranties, and Covenants.** The Parties represent, warrant, and covenant as follows:

    a. This Agreement is the result of negotiations between Parties who have equal access to information concerning this transaction and are fully authorized to sign this Agreement on behalf of the Parties;

    b. The Parties have obtained or have had adequate opportunity to obtain legal advice concerning the meaning and effect of this Agreement and have had sufficient time to consider the meaning and effect of this Agreement;

    c. The Parties are fully aware and clearly understand all of the terms and provisions contained in this Agreement and voluntarily accept those terms and provisions;

    d. This Agreement was executed in accordance with all applicable requirements of law;

    e. The Parties have taken all necessary action to authorize the execution, delivery, and performance of this Agreement and have the authority to execute, deliver, and perform this Agreement and all the transactions contemplated hereby;

    f. Except for the approval of the Bankruptcy Court, no consent, approval or authorization of any person not a Party to this Agreement is required as a condition to the valid execution, delivery, performance or enforceability of this Agreement, or any other document executed in connection with this Agreement;

    g. The Parties' execution, delivery, and performance of this Agreement will not violate any order, writ, judgment or decree of any court, arbitrator or governmental authority

4

12655293v1

to which any of them is a party or by which any of them is bound, and will not violate any provision of, or constitute a default under any agreement to which any of them is a party or which is binding upon any of them; and

h. This Agreement is legal, valid, and binding against the Parties in accordance with its terms.

16. **Survival of Representations and Warranties**. The representations, warranties, promises, covenants, and agreements contained in this Agreement shall survive the execution of this Agreement, except to the extent that they are subject to Bankruptcy Court approval.

17. **Severability.** If any provision or any part of any provision of this Agreement shall, for any reason, be held to be invalid, unenforceable or contrary to public policy or any law, then the remainder of this Agreement shall not be affected thereby and shall remain in full force and effect.

18. **Construction**. This Agreement is the result of negotiations between the Parties, who are represented by counsel. This Agreement was initially drafted by counsel for LPS as a matter of convenience only and shall not be construed for or against any Party on account thereof, but shall be construed according to its plain meaning. Paragraph headings in this Agreement appear for the convenience of the Parties only and shall not be used in the interpretation of the Agreement. Where context requires, the singular includes the plural (and vice versa), the disjunctive includes the conjunctive (and vice versa), and the masculine, feminine, and indeterminate gender pronouns are inclusive rather than exclusive.

19. **Time of Performance.** Time is of the essence as to each provision of this Agreement.

20. **No Third Party Beneficiaries**. Except with respect to any promises or benefits running in favor of the LakePoint Debtors and the LakePoint Defendants, nothing in this Agreement, express or implied, is intended to or shall confer upon any other person any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

(signature pages follow)

_____    9-20-18
Rich Boden, Individually            Date

Sworn to and subscribed before me
this 20 day of Sept, 2018
_____
Notary Public
My commission expires: 12/28/2020

(NOTARIAL SEAL)

[Notary Seal: Craigan Hogeland, Notary Public, Georgia, Expires Dec 28th, 2020, County GA]

_____    9.20.18
Pass the Plate, Inc.                Date

Sworn to and subscribed before me
this 20 day of Sept., 2018
_____
Notary Public
My commission expires: 12/28/2020

(NOTARIAL SEAL)

[Notary Seal: Craigan Hogeland, Notary Public, Georgia, Expires Dec 28th, 2020, County GA]

6

12655293v1

_____          _9/20/18_____

LakePoint Service, LLC                              Date
By LakePoint Land, LLC its Manager

Sworn to and subscribed before me
this 20 day of September, 2018
_LaDonna Jordan_____
Notary Public
My commission expires: 10/29/21

(NOTARIAL SEAL)

*[Notary seal: LADONNA R JORDAN, NOTARY PUBLIC, BARTOW COUNTY, GEORGIA, MY COMMISSION EXPIRES OCTOBER 29, 2021]*

7

12655293v1