# AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY AGREEMENT
# OF LAKEPOINT LAND, LLC

This AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF LAKEPOINT LAND, LLC (the "Agreement"), is entered into and is effective, as of [_____] (the "Effective Date"), by LakePoint Land Holdings, LLC, a Delaware limited liability company (the "Member").

## SECTION 1
## DEFINITIONS

Certain capitalized words and phrases used in this Agreement have the meanings set forth on Exhibit B.

## SECTION 2
## FORMATION

2.1    Formation.  The Company was formed when the Articles were filed with the Georgia Secretary of State on December 14, 2010, and will continue until dissolved, liquidated, and terminated in accordance with this Agreement.  The Company entered into that certain Operating Agreement, dated as of August 16, 2011, as amended by that certain First Amendment to Operating Agreement, dated as of December 31, 2012, that certain Second Amendment to Operating Agreement, dated as of June 30, 2013, that certain Joinder and Amendment to the Operating Agreement, dated as of June 2014, and that certain Second Joinder and Fourth Amendment to the Operating Agreement, dated as of March 31, 2016 (collectively, the "Original Agreement").  This Agreement hereby amends and restates the Original Agreement.

2.2    Name.  The name of the Company is LakePoint Land, LLC, and all business of the Company will be conducted in such name or in any other name or names that are selected by the Member.  The Member may change the name of the Company and may amend the Articles and this Agreement to give effect to such change in name.

## SECTION 3
## MANAGEMENT

3.1    Member Management.  The Company will be Member-managed by the Member, which will have sole authority to manage the Company.  No Person has any authority to act for or bind the Company or to execute any instrument in the name of the Company, except as authorized by, or pursuant to the procedures set forth in, this Section 3.1.  The Member may appoint such officers and other agents for the Company, with such titles and duties, as the Member deems to be appropriate.

3.2    Duties.    In lieu of any duty (including any fiduciary duty) imposed on any Person managing the business and affairs of the Company, by the Act or otherwise at law or in equity, the sole duty of any Person in connection with managing the business and affairs of the Company will be to comply with the terms of this Agreement, and no such Person will have or

33081687

incur any liability to the Company or to the Member in connection with managing the business and affairs of the Company, except for (a) liability for breach of this Agreement, and (b) liabilities that the Act does not permit this Agreement to eliminate.

3.3   Indemnification.   The Company will indemnify the Member and hold the Member wholly harmless from and against any and all debts, obligations, and liabilities of the Company, if any, to which the Member becomes subject by reason of being a Member, or in connection with taking any action on behalf of the Company, whether arising in contract, tort or otherwise, except to the extent that such loss arises from a breach of this Agreement. The indemnification to be provided by the Company hereunder will be paid only from the assets of the Company, and the Member will have no personal obligation, or any obligation to make any capital contribution, with respect thereto.

3.4   Other Activities. The Member may engage in whatever activities the Member may choose, either alone or with one or more other Persons selected by the Member in its sole discretion. Section 14-11-307 of the Act (relating to conflicting interest transactions) shall not apply in the case of the Member having an interest (economic or otherwise) in the outcome of any particular matter relating to the Company.

## SECTION 4
## FINANCIAL MATTERS

4.1   Capital Contributions.

(a)   Initial Capital Contributions.   Simultaneously with the execution and delivery of this Agreement, the Member has made the contribution to the capital of the Company shown for the Member on Exhibit A (collectively, the "Initial Capital Contributions").

(b)   Additional Capital Contributions.   Except for the Initial Capital Contributions, the Member shall not be obligated to make capital contributions to the Company and the membership interests shall be nonassessable.

(c)   Treatment for Tax Purposes.   For so long as the Company has only one member, it is the intention of the Member that the Company be disregarded as a separate entity for federal (and all applicable state and local) income tax purposes.

(d)   Distributions.   Distributable Cash shall be distributed to the Member at such times, and in such amounts, as the Member shall determine from time to time.

## SECTION 5
## MEMBERS

5.1   Members.   The sole member is LakePoint Land Holdings, LLC.

5.2   Additional Interests. Subject to the provisions of this Agreement, the Member shall have the right to cause the Company to issue or sell to any Person any additional membership interests in the Company ("Additional Interests") for an amount as determined by

2

the Member.  The Member shall determine the terms and conditions governing the issuance of such Additional Interests, including the number and designation of such Additional Interests, the preference (with respect to distributions) over any other membership interests and any required contributions in connection therewith.

(b) Additional Members.  In order for a Person to be admitted as a member of the Company with respect to an Additional Interest, such Person shall have delivered to the Company a written undertaking to be bound by the terms and conditions of this Agreement and shall have delivered such documents and instruments as the Member determines to be necessary or appropriate in connection with the issuance of such Additional Interest to such Person or to effect such Person's admission as a member.

## SECTION 6
## EVENTS OF DISSOCIATION; WITHDRAWAL; DISSOLUTION

6.1 Events of Dissolution.  The Company shall dissolve and commence winding up and liquidating upon, and only upon, the determination of the Member that the Company shall be dissolved (a "Dissolution Event").

6.2 Winding Up.  (a) Upon the occurrence of a Dissolution Event, the Company will continue solely for the purposes of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors and the Member.

(b) The assets of the Company shall be liquidated only to the extent determined to be appropriate by the Member and the proceeds thereof, together with such assets as the Member determines (notwithstanding Section 14-11-406(2) of the Act) to distribute in kind, shall be applied and distributed in the following order:

(i) First, to creditors, including the Member to the extent it is a creditor, to the extent otherwise permitted by law, in satisfaction of liabilities of the Company (whether by payment or by making of reasonable provision for payment) other than liabilities for distribution to the Member on account of its interest in the Company; and

(ii) The balance, if any, to the Member.

6.3 Certificate of Termination.  Upon the dissolution and the completion of winding up of the Company, the Member shall promptly execute and cause to be filed a certificate of termination in accordance with the Act and appropriate instruments under the laws of any other states or jurisdictions in which the Company has engaged in business.

3

## SECTION 7
## MISCELLANEOUS

7.1     Notices.  Any notice, payment, demand, or communication required or permitted to be given pursuant to any provision of this Agreement must be in writing and must be (a) delivered personally (b) sent by postage prepaid, certified mail, (c) transmitted by electronic mail, or (d) delivered by nationally recognized overnight courier, addressed as follows, or to such other address as such Person may from time to time specify by notice to the Member:

        (i)     If to the Company, to the Company at:

        [_____]

        (ii)     If to the Member, to the address set forth opposite the Member's name on Exhibit A.

Any such notice, payment, demand, or communication shall be deemed to be delivered, given, and received for all purposes hereof only (x) on the date of receipt if delivered personally or by courier, (y) five (5) days after posting if transmitted by mail, or (z) the date of transmission by electronic mail, whichever shall first occur.

7.2     Binding Effect.  Except as otherwise provided in this Agreement, every covenant, term, and provision of this Agreement shall be binding upon and inure to the benefit of the Member and their respective successors, transferees, and assigns.

7.3     Construction.  Every covenant, term, and provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against any Member.  All Section references shall be deemed to be references to the corresponding section of this Agreement, unless otherwise specified.  The phrase "including" shall be deemed to mean "including, without limitation" in each instance.

7.4     Time.  Time is of the essence with respect to this Agreement.

7.5     Headings.  Section and other headings contained in this Agreement are for reference purposes only and are not intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision hereof.

7.6     Severability.  Every provision of this Agreement is intended to be severable.  If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity or legality of the remainder of this Agreement.

7.7     Incorporation by Reference.  Every Exhibit referred to herein is hereby incorporated in this Agreement by reference.

7.8     Governing Law.  The laws of the State of Georgia will govern the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the Member.  To the extent this Agreement is inconsistent with the Act, this Agreement will govern (to the maximum extent permitted by the Act).

7.9     Directors' Discretion.  Whenever in this Agreement the Member is permitted or required to make a decision, take an action, or grant or withhold a consent, the Member may do so in the Member's sole and absolute discretion, subject only to the express provisions of this Agreement and of the Act.

7.10    Exclusive Jurisdiction.  The parties agree that any action, suit, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement may be brought against any of the parties hereto only in the United States District Court for the Northern District of Georgia, or any state court sitting in the City of Atlanta, Georgia, and each of the parties hereby consents to the exclusive jurisdiction of such courts in any such suit, action, or proceeding and waives any objection to venue laid therein. Without limiting any other method of serving process on any party hereto in any such suit, action, or proceeding, each of the parties agrees that service of process upon such party at the address referred to in Section 7.1 will be deemed effective service of process upon such party.

[signature page follows]

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement under seal as of the Effective Date.

MEMBER:

LAKEPOINT LAND HOLDINGS, LLC

By: _____
Name:
Title:

6

**EXHIBIT A**

**Member; Initial Capital Contributions**

| **Name and Address** | **Initial Capital Contribution** |
|---|---|
| LakePoint Land Holdings, LLC [_____] [_____] [_____] | 100% |

**EXHIBIT B**

"Act" means the Georgia Limited Liability Company Act, as amended from time to time (and any corresponding provisions of succeeding law).

"Additional Interests" has the meaning ascribed to it in Section 5.2.

"Agreement" means this Operating Agreement, as amended from time to time.  Words such as "herein," "hereinafter," "hereof," "hereto," and "hereunder," refer to this Operating Agreement as a whole, unless the context otherwise requires.

"Articles" means the Articles of Organization of the Company.

"Company" means LakePoint Land, LLC, a Georgia limited liability company.

"Dissolution Event" has the meaning ascribed to it in Section 6.1.

"Distributable Cash" means the Company's cash on hand from time to time, from whatever source derived, less Working Capital.

"Member" has the meaning ascribed to it in the Preamble.

"Original Agreement" has the meaning ascribed to it in Section 2.1.

"Person" means any individual, corporation, limited liability company, partnership, trust, or other entity.

"Working Capital" means such amount as is established by the Members from time to time as necessary to meet the obligations of, and to make or reserve for investments by, the Company, including amounts used to pay, or to establish reserves for, expenses, payments of long term and short term indebtedness, and contingencies.